UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

AZADEH MARIAM YAZDI                CASE NO. 6:18-CV-00510

VERSUS                             JUDGE ROBERT R. SUMMERHAYS

LAFAYETTE PARISH SCHOOL BOARD,     MAGISTRATE CAROL WHITEHURST
ET AL.

## MEMORANDUM RULING

Pending before the Court is a Motion to Dismiss [Doc. No. 33] filed by Defendant Lafayette Parish School Board ("LPSB"). Plaintiff Azadeh Yazdi has filed an Opposition [Doc. No. 35], to which Defendant has filed a Reply [Doc. No. 36]. For the following reasons, the motion is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

## I.
## BACKGROUND

On April 14, 2018, Plaintiff Azadeh Yazdi filed this lawsuit alleging that the Lafayette Parish School Board ("LPSB") and Individual Defendants Samec, Pippin, Aguillard, Olivier, and LeBrun are liable under 42 U.S.C. § 1983 for violation of Plaintiff's civil rights, as well as for tortious conduct under Louisiana state law. [Doc. No. 1] On September 14, 2018, Plaintiff sought leave to file a supplemental complaint. [Doc. No. 18] The Court denied that motion,[1] but ordered Plaintiff to seek leave to file a consolidated amended and supplemental complaint. [Docs. No. 21, 22] On October 8, 2018, Plaintiff filed a Consolidated Supplemental and Amended Complaint ("Amended Complaint") [Doc. No. 26], adding Individual Defendants Thibodeaux and Craig and

---

[1] The Court simultaneously denied Motions to Dismiss that had been filed by LPSB and the Defendants named in the Original Complaint.

clarifying Plaintiff's claims. Plaintiff alleges that, after beginning employment with LPSB, she learned of violations of LPSB policy and/or state and federal law by certain of the Individual Defendants. [Doc. No. 26 at ¶¶ 10-16, 19-20] Plaintiff asserts that after she informed Individual Defendants Samec and Pippin of these violations, the Individual Defendants took retaliatory actions against her – including harassing and threatening Plaintiff, tampering with her personnel file, encouraging her to quit, and ultimately terminating her employment. [Doc. No. 26 at ¶¶ 17-33] Plaintiff further alleges that Defendant Aguillard, Superintendent of the Lafayette Parish School System, was made aware of these retaliatory actions but did not intervene. [Doc. No. 26 at ¶ 33] Plaintiff further asserts that after her employment was terminated, certain Individual Defendants disclosed false and negative comments in Plaintiff's personnel file to prospective employers in an effort to deny her employment. [Doc. No. 26 at ¶ 29] In light of these allegations, Plaintiff requests that the Court "declare the employment acts and/or practices... to be in violation of Plaintiff's constitutionally-protected rights," and to "purge Plaintiff's personnel file of all discriminatory and retaliatory information." [Doc. No. 26 at 19-20] Plaintiff further seeks compensatory damages and punitive damages against the Individual Defendants, as well as costs and attorneys' fees. [Doc. No. 26 at 20]

## II.
## STANDARD OF REVIEW

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable clam. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Id.* at 161–62. When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re*

*Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)(citations, quotation marks, and brackets omitted). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) *(citing Twombly,* 550 U.S. at 555, 127 S.Ct.1955). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000). However, "the court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.1994); *see also Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir.2005).

## III.
## ANALYSIS

### A. MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

LPSB argues that Plaintiff's § 1983 claims should be dismissed because Plaintiff fails to identify a policy, policymaker, or deprivation of federal rights sufficient to plead a claim for municipal liability. [Doc. No. 33-1 at 4-5] In her Opposition, Plaintiff adopts the relevant arguments made in her Opposition to the Individual Defendants' Motion to Dismiss[2] [Doc. No. 35

---

[2] Doc. No. 31

at 1], and contends that she has identified the proper policymaker(s) and policies. [Doc. No. 35 at 1-3][3] In its reply, LPSB argues that violations of LPSB policy and state law do not create liability under § 1983, that Plaintiff should be deemed to have waived all claims addressed by Defendant in its motion to which Plaintiff does not explicitly respond. [Doc. No. 36 at 2-6]

Municipalities can only be liable under § 1983 if action taken pursuant to official policy caused the deprivation of a federally protected right. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (internal quotations and citations omitted). To show municipal liability, a plaintiff must prove (1) an official policy or custom, (2) of which a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *Id* (internal quotations and citations omitted). A custom can create municipal liability when it is a practice sufficiently common and well-settled as to fairly represent municipal policy. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (internal quotations and citations omitted). A policy or custom is official "when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." *Id*. While it is possible for a single decision by a policymaker to rise to the level of a policy for purposes of municipal liability, this "single incident exception" is extremely narrow and only applies if the municipal actor is a final policymaker. *Valle*, 613 F.3d at 542. To

---

[3] Plaintiff attaches copies of two purported LPSB policies to her Opposition, which the court need not consider. When considering a Rule 12(b)(6) motion, the Court must generally limit itself to the contents of the pleadings, including attachments thereto. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). While the court may consider documents attached to a motion to dismiss or an opposition to that motion if those documents are referred to in the pleadings and are central to a plaintiff's claims, consideration of attachments outside that narrow scope requires conversion of a Rule 12(b)(6) motion into a motion for summary judgment. *Id*. While Plaintiff's Amended Complaint does make vague references to LPSB policy(ies), the Court does not find that any are described with such specificity as to allow consideration of the attached polices without conversion of Defendant's motion to a motion for summary judgment. Furthermore, the Court finds other deficiencies in Plaintiff's claim of municipal liability under § 1983, such that consideration of the attached policies is not necessary at this stage.

be a municipal policymaker, a person or entity must have responsibility for making law or setting policy in any given area of a local government's business. *Id* (*citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 125, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). The Court finds that Plaintiff has not carried her burden of proving each of the elements of municipal liability under § 1983, and therefore this claim must be dismissed.

As to the question of the relevant policymaker, the parties appear to agree that LPSB, rather than Defendant Superintendent Aguillard, was LPSB's final policymaker at all relevant times. [Doc. No. 33-1 at 5-6; Doc. No. 35 at 1-2] Plaintiff suggests that she asserted in both the Original and Amended Complaint that LPSB was the final policymaker and that Defendant Aguillard was tasked with enforcement of LPSB policies. [Doc. No. 35 at 1-2] The Court notes that because the Amended Complaint does not indicate Plaintiff's intent to adopt or incorporate the contents of the Original Complaint, the Original Complaint is of no effect.[4] Furthermore, Plaintiff's Amended Complaint states "[a]t all times referred to in this Complaint, [Defendant] Aguillard was the Superintendent of the Lafayette Parish School System and the *final policy maker with regards to the Lafayette Parish School Board.*" [Doc. No. 26 at ¶ 9 (emphasis added)] However, as stated plainly in Defendant's Motion and Plaintiff's Opposition, there appears to be no dispute at this stage that LPSB is in fact the relevant *policymaker*, and that Defendant Aguillard was the relevant decisionmaker regarding employment, tasked solely with implementation of LPSB's policies at the relevant times.

---

[4] "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (*citing Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)).

Plaintiff asserts that Defendant Aguillard's actions represent the moving force behind the deprivation of Plaintiff's rights. [Doc. No. 26 at ¶ 42] Plaintiff does not assert that any LPSB policy or custom was the moving force behind any official action, rather that as final decisionmaker regarding employment, Defendant Aguillard's termination action created municipal liability under § 1983. [Doc. No. 26 at ¶¶ 38-43] However, she also alleges that the deprivation of her rights resulted when the Individual Defendants, including Aguillard, *failed* to comply with LPSB policies and/or state law. Specifically, her allegations include: Defendant Thibodeaux failed to assist Plaintiff in ensuring that Board policy was enforced [Doc. No. 26 at ¶ 27]; Defendant Aguillard failed to address Plaintiff's complaints against the Individual Defendants [Doc. No. 26 at ¶ 33]; the Superintendent failed to enforce and comply with LPSB policies regarding responses to allegations of misconduct and treatment of personnel files [Doc. No. 35 at 2]; and Defendants Thibodeaux and Samec failed to comply with LPSB policies. *Id.* Plaintiff does not assert that official policy was the driving force for any of these actions, nor that these actions were part of a widespread practice so common and well-settled as to constitute municipal policy. In total, Plaintiff's allegations are that the Individual Defendants retaliated against her for speaking out about purported violations of policy and/or law, and not that any of their actions were part of an official policy or custom. While Plaintiff does assert that LPSB tacitly approved of the Individual Defendants' actions by not taking steps to modify their conduct [Doc. No. 26 at ¶ 54], she does not allege facts sufficient to support such an allegation,[5] nor would that cure the failure to allege

---

[5] While it is possible for a policymaker to incur municipal liability through ratification of a subordinate's misdeeds, such ratification requires "extreme factual situations" which the Court does not find present in the Amended Complaint. *See Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (*citing Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985), in which the court found municipal policy could be inferred from the fact that, after "reckless" use of excessive force by police caused the wrongful death of an bystander, the city maintained no wrongdoing had occurred, took no corrective action, instituted no policy or training changes, and showed "no sign of any concern except that the City avoid liability.") Here, Plaintiff asserts no facts that show ratification by LPSB other than Aguillard's failure to take corrective

facts supporting a causal connection between an official custom or policy and a deprivation of a federally protected right, which is required for municipal liability under § 1983. The Court therefore finds that Plaintiff has not sufficiently stated a claim against LPSB for municipal liability under § 1983, and therefore Defendant's motion as to those claims is granted. Because the Court finds that Plaintiff has not stated a claim of municipal liability for a constitutional violation under § 1983, it need not discuss the merits of Plaintiff's claim of violation of her First Amendment rights.

## B. CLAIMS UNDER LOUISIANA LAW

### 1. *Respondeat Superior*

Defendant seeks dismissal of Plaintiff's claims in tort under a theory of *respondeat superior*, arguing that Plaintiff only makes conclusory assertions regarding intentional infliction of emotional distress, and that mere employment disputes do not support a claim for intentional infliction of emotional distress.[6] [Doc. No. 33-1 at 12-13] Louisiana Civil Code Article 2320 provides that an employer is responsible for the damage occasioned by its employees in the exercise of the functions in which they are employed, although only if the employer might have prevented the act which caused the damage and did not. La. C.C. art. 2320. To find the employer

---

action after being notified of the alleged misconduct. The Amended Complaint states that "a number of board members were aware of the retaliation, including Aguillard" [Doc. No. 26 at ¶ 32], but is silent as to who those members were, how they came to know about the retaliation, or any actions by those members which might evince *post hoc* ratification of any alleged misconduct.

[6] LPSB cites *Barrera v. Aulds*, No. CV 14-1889, 2016 WL 3001126 (E.D. La. May 25, 2016), to support the proposition that "mere employment disputes do not support an intentional infliction of emotional distress claim." [Doc. No. 33-1 at 13 (emphasis not included)] However, the court in *Barrera* also notes that such claims may lie for workplace conduct "which involve[s] a pattern of deliberate, repeated harassment over a period of time." *Barrera v. Aulds*, No. CV 14-1889, 2016 WL 3001126, at *9 (E.D. La. May 25, 2016)

liable for the intentional tortious actions of its employee, the employee must be "acting within the ambit of his assigned duties and also in furtherance of his employer's objective." *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So. 2d 994, 996 (internal citations and quotations omitted). That determination is informed by consideration of the following factors: (1) whether the tortious act was primarily employment rooted; (2) whether the tortious conduct was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. *Id* at 996-997. "[T]he determination that a particular act is within the course and scope of employment for purposes of vicarious liability is a factual finding." *Id.* at 998 (*citing Ermert v. Hartford Insurance Co.*, 559 So.2d 467, 478 (La.1990)).

In ruling on the Individual Defendants' motion to dismiss[7], the Court concluded that Plaintiff has stated a cause of action for negligent infliction of emotional distress. Plaintiff alleges that the Individual Defendants engaged in a pattern of intentional harassment over time in retaliation for her expressions of concern regarding potential violations of LPSB policy and/or state and federal law, which caused Plaintiff damages, including severe emotional distress. Plaintiff alleges that she was damaged by the Individual Defendants, each of whom was an employee of LPSB at all relevant times. [Doc. No. 26 at ¶¶ 5,8] As to the factors laid out in *Baumeister*, the Court finds Plaintiff has alleged three of the four factors which tend to show that certain of the Individual Defendants were acting in the ambit of their assigned duties and in furtherance of their employer's objective. In particular, Plaintiff alleges that the harassment was in retaliation for concerns related to the Individual Defendants' conduct toward certain LPSB programs, and therefore did not arise from purely personal disputes. [Doc. No. 26 at ¶¶ 16, *et seq.*]

---

[7] Doc. No. 29.

While Plaintiff does not refer to specific dates, times, or places where the alleged harassment took place, a reasonable reading of the Amended Complaint suggests that at least some of the conduct occurred on LPSB premises and during business hours. Plaintiff further alleges that she informed Defendants Aguillard and Thibodeaux of the harassment by the other Individual Defendants, and that no corrective action was taken. [Doc. No. 26 at ¶¶ 21, 25, 27, 33] The Court finds that Plaintiff therefore alleges that LPSB employees committed tortious conduct against her, that conduct arose out of Yazdi's employment and occurred at the place of employment during business hours, that LPSB knew or should have known about that conduct, and that LPSB could have taken action to prevent subsequent tortious conduct but failed to do so. Whether any of these alleged acts will ultimately be found to give rise to vicarious liability by LPSB is beyond the scope of this inquiry.

### 2. Louisiana Whistleblower Statute, LA. R.S. § 23:967

LPSB seeks dismissal of Plaintiff's claims under Louisiana's whistleblower statute, La. R.S. § 23:967, arguing that Plaintiff fails to state which state law(s) was/were violated. [Doc. No. 33-1 at 14]. A plaintiff asserting a claim under Louisiana's whistleblower statute must show (1) her employer violated a state law through workplace practice, (2) the plaintiff advised her employer of the violation, (3) the plaintiff was fired as a result of her refusal to participate in the unlawful practice, and (4) the plaintiff was fired for refusing to participate in the unlawful practice. *Gaspard v. Bechtel Corp. Inc.*, No. CV 2:16-01431, 2017 WL 924188, at *2 (W.D. La. Mar. 6, 2017). The Plaintiff must specify a Louisiana state law that was actually violated; a good faith belief of a violation is insufficient. *Id* (citations and quotations omitted).

Plaintiff alleges that she advised the defendants that they were violating policy and/or law in improperly tampering with the Schools of Choice lottery [Doc. No. 26 at ¶¶ 13-17], the Hinds County Report, *Id.* at ¶ 20, and/or the English as a Second Language program. *Id.* at ¶¶ 19.

While Plaintiff does not refer to specific dates, times, or places where the alleged harassment took place, a reasonable reading of the Amended Complaint suggests that at least some of the conduct occurred on LPSB premises and during business hours. Plaintiff further alleges that she informed Defendants Aguillard and Thibodeaux of the harassment by the other Individual Defendants, and that no corrective action was taken. [Doc. No. 26 at ¶¶ 21, 25, 27, 33] The Court finds that Plaintiff therefore alleges that LPSB employees committed tortious conduct against her, that conduct arose out of Yazdi's employment and occurred at the place of employment during business hours, that LPSB knew or should have known about that conduct, and that LPSB could have taken action to prevent subsequent tortious conduct but failed to do so. Whether any of these alleged acts will ultimately be found to give rise to vicarious liability by LPSB is beyond the scope of this inquiry.

### 2. Louisiana Whistleblower Statute, LA. R.S. § 23:967

LPSB seeks dismissal of Plaintiff's claims under Louisiana's whistleblower statute, La. R.S. § 23:967, arguing that Plaintiff fails to state which state law(s) was/were violated. [Doc. No. 33-1 at 14]. A plaintiff asserting a claim under Louisiana's whistleblower statute must show (1) her employer violated a state law through workplace practice, (2) the plaintiff advised her employer of the violation, (3) the plaintiff was fired as a result of her refusal to participate in the unlawful practice, and (4) the plaintiff was fired for refusing to participate in the unlawful practice. *Gaspard v. Bechtel Corp. Inc.*, No. CV 2:16-01431, 2017 WL 924188, at *2 (W.D. La. Mar. 6, 2017). The Plaintiff must specify a Louisiana state law that was actually violated; a good faith belief of a violation is insufficient. *Id* (citations and quotations omitted).

Plaintiff alleges that she advised the defendants that they were violating policy and/or law in improperly tampering with the Schools of Choice lottery [Doc. No. 26 at ¶¶ 13-17], the Hinds County Report, *Id.* at ¶ 20, and/or the English as a Second Language program. *Id.* at ¶¶ 19.

Plaintiff asserts that she "objected to and/or refused to participate in the discrimination of lottery applicants," *Id.* at ¶ 61, and that after she advised "her employer to stop the discriminatory acts and practices" the defendants retaliated against her. *Id* at ¶ 62. However, while Plaintiff does allege that Defendant's employees violated state law, Plaintiff does not specify which state law might have been violated by any of the actions that she alleges occurred. Because the specification of a violation of state law is an essential element of a claim under § 23:967, Plaintiff has not sufficiently stated a claim against Defendant for violation of the Louisiana whistleblower statute, and Defendant's motion as to that claim must be granted.

### 3. Other Louisiana Law

LPSB also seeks dismissal of any other state law claims, including negligence or gross negligence, arguing that Plaintiff has made no factual allegations that might support a claim under any other Louisiana law. [Doc. No. 33-1 at 15] In the Amended Complaint, Plaintiff asserted claims against Defendant for: (1) violation of § 1983, (2) retaliation in violation of the First Amendment to U.S. Constitution, (3) liability for the actions of Defendant's employees under *respondeat superior*, and (4) violation of La. R.S. § 23:967.[8] [Doc. No. 26 at ¶¶ 34-72] The Court has addressed each of these claims, and finds no other state law claims set forth in the Amended Complaint. Consequently, to the extent Defendant moves for dismissal of state claims other than those discussed herein, the motion is denied as moot.

---

[8] Count Five asserts claims of infliction of emotional distress by the Individual Defendants, for which LPSB might only be vicariously liable.

## C. Leave to Replead

LPSB argues that Plaintiff should not be granted further leave to replead. [Doc. No. 33-1 at 15] Plaintiff's opposition does not address whether she seeks an opportunity to amend or replead her claims against LPSB. Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely" grant leave to amend when "justice so requires." But this "generous standard is tempered by the necessary power of a district court to manage a case." *Priester v. J. P. Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013). One key exception to this generous standard is where the amendment would be futile. *See Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000). In determining futility, courts "apply the same standard of legal sufficiency as applies to Rule 12(b)(6)." *Id.* In other words, if an amendment would be subject to the same grounds of dismissal as under a defendant's original Rule 12(b)(6) motion, amendment would be futile and the court should deny leave to amend. Plaintiff had prior notice of the deficiencies in her § 1983 claims against LPSB and had a prior opportunity to amend and correct the deficiencies.[9] Consequently, the Court finds that further opportunity to replead Plaintiff's § 1983 claims would be futile, and any leave to replead will therefore be denied. Leave to replead Plaintiff's claim of violation of LA. R.S. § 23:967, however, is granted. All such amendments or repleadings shall be filed no later than fourteen (14) days from the date of this ruling.

---

[9] In the original Complaint, Plaintiff seeks redress for violations of § 1983 by LPSB and the Individual Defendants [Doc. No. 1]; LPSB's first motion to dismiss argues that Plaintiff's § 1983 claim against the Board is deficient [Doc. No. 12], and Plaintiff's opposition to that motion clarifies her § 1983 claim for violation of her First Amendment rights [Doc. No. 14]; despite Plaintiff's clarification, the Magistrate Judge agreed with LPSB's argument regarding the § 1983 claim, and granted Plaintiff leave to amend her complaint to allege facts sufficient to state a claim against LPSB [Doc. No. 21]; Plaintiff filed the Amended Complaint, further elucidating her § 1983 claim against LPSB [Doc. No. 26]; LPSB's second motion to dismiss asserted separate deficiencies regarding the § 1983 claim than the first motion did [Doc. No. 33], which Plaintiff addressed in her oppositions [Doc. No. 35].

### D. SUPPLEMENTAL JURISDICTION

For the reasons given above, the Court finds that Yazdi has not stated claims for relief under federal law, but has stated claims under state law. LPSB argues that in such an instance, this Court should decline to retain supplemental jurisdiction over her state law claims. [Doc. No. 33-1 at 11] By reference to her opposition to the Individual Defendants' motion to dismiss, Yazdi argues that this Court should retain supplemental jurisdiction over her state law claims. [Docs. No. 31, 35]

Under 28 U.S.C. § 1367(a), a district court can exercise supplemental jurisdiction over a claim that is so related to a case or controversy over which the court has original jurisdiction that the supplemental claim forms part of the same case or controversy. 28 U.S.C. 1367(a). However, a district court may decline to exercise supplemental jurisdiction over such claim if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) there are other compelling reasons for declining jurisdiction, in exceptional circumstances. 28 U.S.C. § 1367(c). These factors must be considered on a case-by-case basis, and no single factor is dispositive. *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rough Par.*, 373 F. App'x 438, 442 (5th Cir. 2010). In general, a district court "should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute." *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). In addition to the factors set out in § 1367(a), the court should consider judicial economy, convenience, fairness, and comity, and especially whether the court has invested a significant amount of resources in the litigation. *Id.* Such considerations include whether extensive or substantive motions have been

filed and/or ruled on, whether a scheduling order has been issued, whether hearings have been held, the relative convenience of the relevant state and federal courthouses, and whether it will prejudice either party to have the state law claims heard in state court. *Hicks v. Austin Indep. Sch. Dist.*, 564 F. App'x 747, 749 (5th Cir. 2014).

After a review of the law and docket, the Court will continue to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against LPSB. All federal claims against LPSB have been dismissed, leaving only a state law claim of vicarious liability, which does not necessarily present a novel or complex question of state law. Review of the docket suggests the court has not expended significant resources in litigating this matter: to wit, the only pleadings filed thus far relate to motions to dismiss and to the amendment of Plaintiff's Complaint, and as of writing no Answers have been filed, nor has a scheduling order been issued. The relevant state court is equally convenient to the parties as the federal court, and trying the remaining issues in state court rather than federal court would not prejudice either party. However, Plaintiff's claims against LPSB are part of the same case or controversy as her claims against the Individual Defendants, arising as they do from a common nucleus of operative fact.[10] The Court has granted Plaintiff leave to replead certain of her federal claims against the Individual Defendants, and the resolution of those claims could impact the determination of retaining supplemental jurisdiction over Plaintiff's state claims against LPSB. Consequently, the Court will at this point defer its determination of whether to retain supplemental jurisdiction over Plaintiff's claims against LPSB, and will continue to exercise jurisdiction.

---

[10] *Venable v. Louisiana Workers' Comp. Corp.*, 740 F.3d 937, 944 (5th Cir. 2013).

## IV.
## CONCLUSION

For the reasons set forth above, the Motion to Dismiss [Doc. No. 33] filed by Defendant LPSB is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

Plaintiff's claims of municipal liability in violation of 42 U.S.C. § 1983 and retaliation in violation of the First Amendment are DISMISSED WITH PREJUDICE.

Plaintiff's claim of violation of La. R.S. 23:967 is DIMISSED WITHOUT PREJUDICE. Leave to replead that claim is GRANTED. If Plaintiff seeks leave to replead, an amended complaint shall be filed no later than fourteen (14) days from the date of this ruling.

Defendant's motion is DENIED as to Plaintiff's claim of vicarious liability.

The question of whether the Court will retain supplemental jurisdiction over Plaintiff's state law claims is DEFERRED.

THUS DONE AND SIGNED in Chambers on this 30th day of September, 2019.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE